Day, Chief Judge.
Davidson holds title to one hundred and sixty acres of land in question, by a patent of the United States. He obtained the patent upon a United States land-warrant, which he acquired by assignment from Mary Walters and the guardian of Malinda Walters. He had, then, no other right to the warrant than what he acquired by that assignment. He may have supposed that the assignment gave him a clear title thereto, and if he is chargeable neither with notice nor want of diligence, in regard to the rights of the plaintiff, he holds a clear title to the land under the patent.. Dixon v. Caldwell, 15 Ohio St. 412. But if he had full knowledge of the facts upon which the plaintiff' bases her claim against him, his mere misapprehension of the law, arising from such facts, will mot protect him from being chargeable with notice of her .rights. He knew that the warrant, on its face, purported 'to be, and was, issued to the widow and child of Robert Walters, a deceased soldier. He knew that the child was a minor, for he did not take her personal assignment, but '.took that of her guardian. The facts were equally known 'to all the parties except the child, who was then too young •to understand; and the presumption is, they were not •ignorant of the law relating thereto. Therefore, whatever «rights Davidson acquired, as against the plaintiff, he obtained from her trustee as guardian, duly appointed by the proper court; and this raises the question as to what right, passed to Davidson by the assignment of the guardian.
The ninth section of the act of Congress of February 11, 1847 (9 U. S. Stat. at Large, 125), after providing for the issuing of land-warrants to the soldiers of the Mexican war, contains the following provision: That in the event of the death of any such soldier, “during service, or after 'his discharge, before the issuing of a certificate or warrant, ;as aforesaid, the said certificate or warrant shall be issued ¡in favor, and inure to the benefit of his family or relatives, *515 according to the following rules: First, to the widow and his children; second, to his father; third, to his mother; and in the event of his children being minors, then the legally constituted guardian of such minor children shall, in conjunction with such of the children, if any, as may be of full age, upon being duly authorized by the orphans’, or other court having probate jurisdiction, have power to sell and dispose of such certificate or warrant for the benefit of those interested.”
It has ever been the policy of Congress, as manifested by this section, to secure to the soldier, and in case of his death, to his family, the greatest practical benefit of its bounty, and at the same time protect them in the enjoyment thereof. Accordingly, the' “ legally constituted guardian ” of a deceased soldier’s minor child, is empowered to dispose of the interest of his ward in such bounty, but can do so only when authorized by the proper probate court; for the express power to sell upon the authority of the probate court, conferred on the guardian, clearly excludes the idea of his power to sell without such authorization. The maxim expressio unius exclusio alterius applies. The enactment was clearly intended not only to authorize the sale of warrants pertaining to real estate, but for the greater security of such minor children, and to protect them from being deprived of such bounty by the act of a guardian by virtue of his general powers alone; he must add thereto the express sanction and authorization of the proper court. It is not pretended that this was done. The assignment of the guardian rests upon his general powers only, which, under the statute, are insufficient to transfer the rights of the ward in the warrant. Davidson, then, as to the plaintiff, acquired no right thereto relieving him from accountability as her trustee.
In support of this view of the case, we need only refer to the following cases: In Reeder v. Barr, 4 Ohio, 447, it was held that, where a patent was issued to the assignee of the administrator of a deceased person, a subsequent purchaser could not prevail against the heirs of the de *516 ceased, on the ground of being an innocent purchaser, without notice, for it appeared on the face of the papers that the title came through an administrator, whose assignment “ could be available only by a previous compliance with certain legal formalities.” Much more is the rule applicable in this case, for Davidson was the immediate assignee of the guardian, who made the assignment in derogation of the statute.
In Denning v. Smith, 3 Johns. Ch. 344, it was held that a special authority must be strictly pursued; that a purchaser is presumed to know such authority when it is given by public statute; and that if he purchases where the authority is not pursued, it is at his peril..
But 'it is said the plaintiff’s claim is barred by lapse of time; not that it is barred by the statute of limitations, but that it can not be enforced in equity, for the reason that it has become stale. It is only necessary to say upon this point, that it is questionable if the plaintiff had a distinct knowledge,,of her rights until near the time the action was brought; but, however this may be, she was under the disability of infancy until about seven years before the suit was commenced, and, under the circumstances of the case, can not be chargeable with such laches as in equity ought to defeat the action.
It follows that the judgment of the district court dismissing the plaintiff’s petition must be reversed and the cause remanded for a new trial.